EXHIBIT 2

EXHIBIT 2
Page 14

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/02/2024 12:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

1 Lawrence A. Organ (SBN 175503)
  Julianne K. Stanford (SBN 290001)
2 Kira Brekke (SBN 339757)
  CALIFORNIA CIVIL RIGHTS LAW GROUP
3 332 San Anselmo Avenue
  San Anselmo, CA 94960
4 Tel. (415) 453-4740
  Fax (415) 785-7352
5 Email: larry@civilrightsca.com
6        julianne@civilrightsca.com
         kira@civilrightsca.com
7
  Attorneys for Plaintiff
8 Nicholas Harris

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10          COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

11

12 | | Case No.: 24STCV08174 |
13 NICHOLAS HARRIS,

COMPLAINT FOR DAMAGES

14              Plaintiff,

15   vs.                                      1. Disability Discrimination in Violation of
                                                 FEHA;
16                                            2. Failure to Prevent Discrimination in Violation
   Elevance Health, Inc., Blue Cross of          of FEHA;
17 California, The Elevance Health Companies,  3. CFRA Retaliation;
   Inc., and DOES 1 through 10, inclusive,    4. CFRA Interference;
18                                            5. Wrongful Termination in Violation of Public
                                                 Policy; and
19              Defendants.                   6. Failure to Produce Personnel Records in
                                                 Violation of California Labor Code § 1198.5
20

21                                            JURY TRIAL DEMANDED

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

EXHIBIT 2
Page 15

**SUMMARY**

1.      This is an action by Plaintiff Nicholas Harris ("Plaintiff") against Elevance Health, Inc., Blue Cross of California, and The Elevance Health Companies, Inc. (hereinafter collectively as "Defendants"). Throughout his approximately four years of employment with Defendants, Plaintiff Harris had a pristine work record; yet, as soon as he developed severe neurological issues, everything changed. He was discriminated against, put on an unjustified performance improvement plan and terminated *while he was on medical leave.*

2.      Plaintiff brings this action against Defendants for compensatory and punitive damages pursuant to Civil Code § 3294, pre-judgement interest pursuant to Code of Civil Procedure § 3291, and costs and reasonable attorneys' fees pursuant to Government Code § 12965(b) and Code of Civil Procedure § 1021.5.

**JURISDICTION AND VENUE**

3.      Jurisdiction and venue are proper in this court pursuant to Civil Code § 52 and Code of Civil Procedure § 395(a). This Court has jurisdiction in that the amount in controversy exceeds the jurisdictional limits of this Court according to proof at trial.

4.      Venue is proper in Los Angeles County, California, pursuant to California Government Code § 12965(b), because during all relevant times Defendants employed Plaintiff in this county and the unlawful practices and acts alleged herein were committed within this county.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.      On October 2, 2023, Nicholas Harris timely filed a charge of discrimination with the California's Civil Rights Department ("CRD"). On November 3, 2023, the CRD issued a Right-to-Sue Notice. On April 1, 2024, Mr. Harris filed an amended charge with the CRD to include additional Defendants. He received an amended Right-to-Sue Notice that same day. Accordingly, Plaintiff has timely exhausted the administrative remedies. A true and correct copy of Plaintiff's Amended Right-to-Sue Notice is attached to this complaint as Exhibit A.

6.      Plaintiff Harris is, and at all times mentioned in this Complaint was, an adult resident of the State of California. Plaintiff was employed by Defendants within the meaning of Government Code § 12926(d). Plaintiff Harris is informed and believes, and thereon alleges, that Defendants ELEVANCE

1

1  HEALTH, INC., BLUE CROSS OF CALIFORNIA, THE ELEVANCE HEALTH COMPANIES,

2  INC., and DOES 1 through 50, inclusive, and each of them, are, and at all times herein mentioned were,

3  corporations or other business entities doing business in the State of California and in the County of

4  Los Angeles. Plaintiff Harris is further informed and believes, and thereon alleges, that said Defendants

5  are and were, at all relevant times mentioned herein, "employer[s]" within the meaning of Sections

6  12926(d) and 12940(j)(4)(A) of the California Government Code. In addition, each Defendant

7  compelled, coerced, aided, and abetted the discrimination, which is prohibited under Section 12940(i)

8  of the California Government Code. Finally, at all relevant times mentioned herein, all Defendants acted

9  as agents of all other Defendants in committing the acts alleged herein.

10        7.     Defendant Elevance Health, Inc. (prior to approximately June of 2022, "Anthem, Inc.")

11  is, and at all times mentioned in this Complaint was, a corporation formed under the laws of the State

12  of Indiana and headquartered in Indiana. At all times relevant in this complaint, Defendant Elevance

13  Health, Inc. conducted business throughout the State of California, including within the County of Los

14  Angeles. Defendant Elevance Health, Inc. is an American health insurance provider. It is a for-profit

15  corporation and is publicly traded. In 2022, Defendant Elevance Health, Inc. reported over six trillion

16  dollars in net income. Defendant Elevance Health, Inc. is a conglomerate with many subsidiaries and

17  affiliated entities throughout the U.S., including California, and does business under many names,

18  including Elevance, Anthem, and Anthem Blue Cross. It owns, controls, manages and sets policies for

19  all of the other entity defendants, including BLUE CROSS OF CALIFORNIA, THE ELEVANCE

20  HEALTH COMPANIES, INC., and DOES 1 through 50, inclusive. Plaintiff is informed and believes,

21  and thereon alleges, that Defendant Elevance Health, Inc. is the umbrella company of these numerous

22  other subsidiaries, agents, and affiliated entities throughout the U.S., including California and including

23  those stated herein. Plaintiff is informed and believes, and thereon alleges that he weas acting on behalf

24  of all Defendants stated herein throughout his employment with Defendants. Further, all Defendants

25  stated herein, together, act as an integrated enterprise and/or "single employer" and/or "joint employer"

26  in executing the unlawful employment practices alleged herein, sharing policies, common agents,

27  directors, corporate locations, and operations. In this vein, according to Elevance Health, Inc.'s most

28

2

1    recent 2022 10-K form required by the United States Securities and Exchange Committee, "the terms

2    'we,' 'our,' 'us,' 'Elevance Health' or the 'Company' refer to Elevance Health, Inc., an Indiana

3    corporation, and, unless the context otherwise requires, its direct and indirect subsidiaries."

4         8.    Defendant Blue Cross of California (which does business as "Anthem Blue Cross") is a

5    corporation incorporated and headquartered in California with its principal offices located at 21215

6    Burbank Blvd., Woodland Hills, California, 91367. The "Anthem Blue Cross" administrative address

7    is listed as P.O. Box 60007, Los Angeles, CA 90060-0007. Plaintiff Harris entered into a contract with

8    Blue Cross of California, which dictated his employment and informed his day-to-day operations,

9    including appointing him the federal government population he served and even dictating the

10   geographic locations he physically serviced. Secondly, Plaintiff Harris received an expense budget from

11   Blue Cross of California to perform work, i.e. sell its insurance plan, specifically for the benefit of Blue

12   Cross of California, which in turn paid for Plaintiff Harris's related expenses for the benefit it rendered

13   from his work. Lastly, in addition to budget allocation, Blue Cross of California also directly paid

14   Plaintiff Harris annual commissions based on the Blue Cross of California insurance plans he sold in

15   the marketplace as of the work he did advancing their business.

16        9.    Defendant The Elevance Health Companies, Inc. is, and at all times mentioned in this

17   Complaint was, a corporation formed under the laws of the State of Indiana and headquartered in

18   Indiana. Defendant engaged in business throughout the State of California, including within the County

19   of Los Angeles. The Elevance Health Companies, Inc. paid Plaintiff for work he performed, including

20   on behalf of Elevance Health, Inc.

21        10.   In addition to the Defendants named above, Plaintiff sues fictitious Defendants Does 1-

22   10, inclusive, because their names, capacities, status, or facts showing them to be liable are not presently

23   known. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named

24   Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants

25   caused Plaintiff damages as herein alleged. Plaintiff will amend this complaint to show their true names

26   and capacities, together with appropriate charging language, when such information is ascertained.

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

EXHIBIT 2
Page 18

1

**FACTUAL ALLEGATIONS**

2       11.     Plaintiff Harris incorporates by reference the allegations set forth in the preceding

3   paragraphs.

4       12.     On June 7, 2019, Anthem, Inc.—Defendant Elevance Health, Inc.'s predecessor—

5   offered Mr. Harris a position as a Field Service Account Consultant serving Southern California.

6       13.     Mr. Harris accepted the offer and began working for Defendants on June 24, 2019. As a

7   Field Service Account Consultant, his job duties included facilitating insurance sales, enrolling new

8   clients, retaining federal agencies, and other consultative services. Mr. Harris entered into a contract

9   with Blue Cross of California, which dictated his employment and informed his day-to-day operations,

10   including appointing him the federal government population he served and even dictating the

11   geographic locations he physically serviced. Mr. Harris received an expense budget from Blue Cross of

12   California to perform work, i.e. sell its insurance plan, and directly paid him annual commissions based

13   on his performance.

14       14.     By any measure, Mr. Harris' performance over his approximately four years of

15   employment was exemplary. He had strong reviews, received a promotion, and won awards, including

16   Defendants' Values in Action award. He also won the highly-competitive selection process into

17   Defendants' Flag Leadership Program, further winning the capstone project in December of 2022 for

18   spearheading and developing a project that was so successful it was approved for the whole Federal

19   Health Products and Services ("FHPS") sales team. He contributed to top-ranking membership growth

20   in California and he was relied upon to train and mentor new employees. Up until he started

21   experiencing health issues approximately six months before he went on medical leave, Mr. Harris never

22   received any disciplinary action and he enjoyed the meaningful work he did for Defendants.

23       15.     In November of 2022 at just 36 years old, Mr. Harris started experiencing severe health

24   issues, including seizures and tremors, requiring trips to the ER and urgent appointments with his

25   neurologist. He underwent significant medical testing, including EEGs, CT scans and MRIs, and he was

26   put on daily seizure medication. Mr. Harris was able to continue working and meeting his metrics but

27   had to take time off in November and December for doctor's appointments, particularly as issues with

28

4

his medication arose.

16.    Also in November, Mr. Harris informed his manager Kimberly Corlew, FEP Field Service Manager for FHPS, about his health issues. Shortly thereafter, Ms. Corlew began treating him differently. In his performance review shortly thereafter on February 18, 2023, she gave him the same performance evaluation as the prior year even though his achievements were far more notable and included his accomplishments with the aforementioned FLAG leadership program, and growing his HMO plan membership by approximately 180 percent. She began monitoring him closer in ways she did not other employees, including by booking two trips out to California to shadow *only* him. In person, she started suggesting he look for another job. Mr. Harris grew exceedingly concerned about his job security. His health issues, however, had improved with the proper medication and doctor supervision. His doctors' visits reduced to one to two times per month.

17.    Despite this, things spiraled further with Ms. Corlew. On or around May 16, 2023, she told Mr. Harris that he was being put on a Performance Improvement Plan ("PIP") for having lower site visits to potential customers the prior few months. However, any lower numbers were perfectly justifiable because he attended numerous high-value conferences that took him out of the field, and, importantly, Mr. Harris had never before been exclusively evaluated on a monthly basis. Rather, up until that point, he was encouraged to hit 25 site visits per month but ultimately required to hit a cumulative number of site visits *per year*.

18.    Specifically, in February of 2023, Mr. Harris completed 20 site visits, which was slightly lower than the encouraged 25 because he had a week of jury duty, attended Defendants' Spring conference out-of-state for a week and attended a virtual conference. In March, his site visits jumped to 34, more than offsetting the prior month. In April, he completed 19 site visits. That month he traveled to Arizona for Defendants' Western Regional Conference and took paid time off. In May, he completed 45 visits, more than offsetting the prior month.

19.    In his PIP, Ms. Corlew ignored that Mr. Harris already offset any marginally lower site visit numbers, particularly when he achieved 45 site visits in May. Yet, during the verbal notification of his PIP, she ridiculed his performance and, unrelatedly, called him "borderline insubordinate" for no

5

1  cognizable reason given she had approved all of his recent work and conduct. A few days later on May

2  22, she gave him a written PIP that included other broad, vague criticism that she had not discussed

3  with him making it difficult for him to know what to correct. Mr. Harris still did not understand the

4  justification for the PIP and requested to speak with Human Resources. HR never responded to his

5  request.

6        20.    Shortly thereafter, Mr. Harris developed an essential tremor. His neurologist

7  recommended immediate medical leave. On May 25, he requested to go on medical leave pursuant to

8  the California Family Rights Act ("CFRA"). His return date was July 19.

9        21.    On July 7, *while on job-protected leave*, Ms. Corlew texted Mr. Harris and said, "Hi

10  Nick, I hope you are doing well. Are you available on Monday at 11am PST for a quick call check in

11  and discuss your return from [Leave of Absence]? I'll have some updates that we'll need to discuss."

12  Mr. Harris said he was available.

13        22.    Three days later on July 10, Ms. Corlew called Mr. Harris with another manager[1] and

14  terminated him. Her reasoning was that he did not improve his performance pursuant to his PIP. This

15  means that from May 22 when Mr. Harris was given his written PIP to May 25 when he went out on

16  CFRA leave, Ms. Corlew gave Mr. Harris *three days to "fix" his performance*, which is an unreasonable

17  standard by any measure and an extraordinarily hostile act toward a long-term employee whom she

18  knew was in the midst of a health crisis. Further, she patently disregarded that Mr. Harris *had already*

19  *improved his performance metrics in the weeks before he went out on leave*, undermining the legitimacy

20  of the PIP. Mr. Harris was devastated.

21        23.    After his termination on July 17, Mr. Harris complained to HR about disability

22  discrimination. He had a second call with HR on July 25 where an investigation was opened. Six days

23  later on July 31, he received a call from HR that his termination was upheld and the investigation was

24  closed.

25  _____

26

27  [1] The other manager was Andrew Sinclair who was Ms. Corlew's counterpart covering the eastern half of the country.

28                                 6

24. Since getting on the proper medical and treatment plan, Mr. Harris' health has stabilized.

25. Defendants' conduct, as alleged herein, have caused Mr. Harris damages including, but not limited to, loss of wages and compensation, and emotional distress.

## FIRST CAUSE OF ACTION
### Disability-Based Discrimination in Violation of FEHA
### Cal. Gov. Code §12940(a)
### (Against all Defendants)

26. Plaintiff incorporates the foregoing paragraphs by reference as though fully reproduced herein.

27. It is unlawful for an employer "because of…physical disability…to bar or to discharge the person from employment…or to discriminate against the person in compensation or in terms, conditions or privileges of employment. (Gov. Code §12940(a).) At all times mentioned in this Complaint, section 12940(a) was in full force and effect and binding on Defendants.

28. Plaintiff suffered from a qualifying disability including seizures and essential tremor as alleged above.

29. He competently performed work for Defendants for many years and could have continued to do so with the appropriate accommodations and medical leave.

30. Plaintiff's disability was a substantial factor in Defendants' decision to take adverse action against him by, including but not limited to, targeting him, putting him on a PIP and terminating his employment while on medical leave.

31. Such discrimination is in violation of section 12940(a) and has resulted in injury to Plaintiff as alleged herein.

32. As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain economic losses and emotional distress in an amount according to proof.

33. As a result of the above conduct, Plaintiff has retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

7

34.     Plaintiff requests that injunctive relief be issued requiring Defendants to cease and desist from any discriminatory practices, including but not limited to terminating employees suffering from medical issues, to effectuate the purposes of section 12940 *et seq.*

### SECOND CAUSE OF ACTION
**Failure to Prevent Discrimination in Violation of FEHA**
**Gov. Code § 12940(k)**
**(Against all Defendants)**

35.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

36.     Government Code § 12940(k) provides that it shall be an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination and retaliation from occurring in the workplace.

37.     FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." (Gov. Code § 12926(d).) Defendants are employers as defined by FEHA because they regularly employed five or more persons.

38.     Defendants subjected Plaintiff to discrimination and/or retaliation in the course of Plaintiff's employment by discriminating against him and terminating him after suffering from medical issues. Following his PIP, he requested to speak to HR who never reached out to him. Similarly, following his termination, he filed a complaint of disability discrimination, which was inadequately investigated and his termination was upheld.

39.     Plaintiff was harmed and the harassing conduct was a substantial factor in causing him harm. Plaintiff suffers mentally and emotionally from the trauma of being discrimination against on the job. He also suffers economically from having been wrongfully removed from the job site.

40.     The above conduct violates FEHA, as well as the public policy of the state of California. Plaintiff is therefore entitled to all categories of damages, including, but not limited to, economic and non-economic damages.

41.     As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain economic losses and emotional distress

8

1 | in an amount according to proof.

2 |      42.    As a result of the above conduct, Plaintiff has retained attorneys to prosecute this

3 | action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including

4 | expert witness fees and costs, incurred in bringing this action.

5 |      43.    Defendants and its managing agents engaged in the above conduct maliciously,

6 | fraudulently, and oppressively, or in conscious disregard of the rights of Plaintiff and other disabled

7 | workers. As such, Plaintiff is entitled to recover punitive damages.

**THIRD CAUSE OF ACTION**
**Retaliation Under the CFRA**
**Violation of Cal. Gov. Code §§ 12945.2 et seq.**
**(Against all Defendants)**

     44.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

     45.    The California Family Rights Act requires employers to provide (12) weeks of leave

for any employee who has been employed by the company for over a year and has worked over 1250

hours for the employer over the previous year for family medical leave. The CFRA also requires

employers to return an employee who takes leave under the act to the same or comparable position at

the conclusion of the employee's leave.

     46.    Defendants are employers as defined by the CFRA. Defendants have over 5 employees

within a 75-mile radius of Plaintiff's work location. At the time of Plaintiff's request for leave, he had

been employed by Defendants for over one year and had worked for Defendants for over 1250 hours

during the previous year.

     47.    In violation of the CFRA, Defendants retaliated and discriminated against Plaintiff by,

including but not limited to, putting him on an unjustified performance improvement plan and

terminating him while on medical leave after having actual notice of his disability.

     48.    Defendants' acts were malicious, oppressive or fraudulent with intent to vex, injure,

annoy, humiliate and embarrass Plaintiff, and in conscious disregard of the rights or safety of Plaintiff

and other employees of Defendants, and in furtherance of Defendants' ratification of the wrongful

conduct of the employees and managers of Defendants. According, Plaintiff is entitled to recover

9

1    punitive damages from Defendants.

2         49.    By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff

3    has necessarily retained attorneys to prosecute the within action. Plaintiff is therefore entitled to

4    reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in

5    bringing the within action.

6         50.    As a result of Defendants and each of their actions, Plaintiff sustained economic

7    damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff

8    suffered emotional distress, resulting in damages to be proven at trial.

9         51.    The above discriminating conduct violates the CFRA and California public policy and

10   entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

11                        **FOURTH CAUSE OF ACTION**
                          **CFRA Leave Interference**
12              **Violation of Cal. Gov. Code §§ 12945.2 et seq.**
                          **(Against all Defendants)**
13

14        52.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

15        53.    The California Family Rights Act requires employers to provide (12) weeks of leave

16   for any employee who has been employed by the company for over a year and has worked over 1250

17   hours for the employer over the previous year for family medical leave. The CFRA also requires

18   employers to return an employee who takes leave under the act to the same or comparable position at

19   the conclusion of the employee's leave.

20        54.    Defendants are employers as defined by the CFRA. Defendants have over 5 employees

21   within a 75-mile radius of Plaintiff's work location. At the time of Plaintiff's request for leave, he had

22   been employed by Defendants for over one year and had worked for Defendants for over 1250 hours

23   during the previous year.

24        55.    It is unlawful to interfere with an employee's right to take leave. Plaintiff was entitled

25   to take CRFA leave and Defendants interfered with that right by prematurely ending his right to take

26   job-protected leave by firing him and refusing to return him to the same or substantially similar

27   position.

28

                                    10

56.     Defendants' acts were malicious, oppressive or fraudulent with intent to vex, injure, annoy, humiliate and embarrass Plaintiff, and in conscious disregard of the rights or safety of Plaintiff and other employees of Defendants, and in furtherance of Defendants' ratification of the wrongful conduct of the employees and managers of Defendants. According, Plaintiff is entitled to recover punitive damages from Defendants.

57.     By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff is therefore entitled to reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

58.     As a result of Defendants and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress, resulting in damages to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Wrongful Termination in Violation of Public Policy**
**(Against all Defendants)**

59.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

60.     Plaintiff's wrongful termination from his employment with Defendants was based upon Defendants' violation of the Public Policy of the State of California as put forward in the California Family Rights Act, Fair Employment and Housing Act, the California Constitution, and other statutes and provisions.

61.     As a legal and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to emotional distress and lost wages, all in a sum to be established according to proof at trial.

62.     By reason of Defendants' conduct, Plaintiff has necessarily retained attorneys to prosecute the action on his behalf. Pursuant to Government Code § 12965(b), Plaintiff is entitled to recover attorneys' fees, costs, and expert witness fees.

63.     Defendants' misconduct was committed intentionally, in a malicious, fraudulent,

11

despicable, and oppressive manner, entitling Plaintiff to punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
### Failure to Provide Personnel Records in Violation of Cal. Labor Code § 1198.5
### (Against All Defendants)

64.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

65.     On August 3, 2023, Plaintiff sent a written request to Defendants to make the contents of his personnel records available for inspection. In violation of Labor Code section 1198.5(b), Defendants failed to respond within thirty (30) days. Further, in violation of Labor Code section 432, Defendants failed to respond within a reasonable time.

66.     When Defendants responded on August 8, 2023, they neglected to include, nor did they include at any point within the statutory time period:

a.     Notices of warning, discipline and/or termination;

b.     Notices of leave of absence;

c.     Education and training notices and records;

d.     Attendance records;

e.     Documents or instruments signed by Plaintiff related to his employment, pursuant to California Labor Code Section 432; or other records encompassed by California Labor Code Section 1198.5.

67.     Accordingly, Plaintiff seeks injunctive relief to obtain compliance with this section, pursuant to Labor Code section 1198.5(l).

68.     As a result of Defendants' failure to produce Plaintiff's personnel records for inspection, as alleged herein, Plaintiff is entitled to a civil penalty of $750.00 as provided in Labor Code section 1198.5(k).

69.     As a result of Defendants' failure to produce Plaintiff's personnel records for inspection, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit, as provided in Labor Code Section 1198.5(l).

12

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a.      General damages according to proof, however, no less than the jurisdictional limit of this court;

b.      Special damages in amounts according to proof, together with prejudgment interest;

c.      Punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct;

d.      Reasonable attorneys' fees and costs pursuant to Government Code Section 12965(b) and any other applicable statute;

e.      Interest as provided by law;

f.      Injunctive relief to require Defendants to develop and implement policies and procedures to ensure that effective remedial measures are taken when discrimination is reported, and training on retaliation is administered; and

g.      For such other and further relief as this Court deems equitable and appropriate.


DATED: April 1, 2024            **CALIFORNIA CIVIL RIGHTS LAW GROUP**

By: _____

Kira Brekke
Attorneys for Plaintiff
Nicholas Harris

13

1

## DEMAND FOR JURY TRIAL

2          Plaintiff hereby demands a trial by jury on all issues.

3

4          DATED: April 1, 2024              **CALIFORNIA CIVIL RIGHTS LAW GROUP**

5

6                                            By: _____

7

8                                            Kira Brekke
                                             Attorneys for Plaintiff
9                                            Nicholas Harris

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                             14

# EXHIBIT A

EXHIBIT 2
Page 30



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 1, 2024

Kira Brekke
332 San Anselmo Avenue
San Anselmo, CA 94960

RE:   **Notice to Complainant's Attorney**
        CRD Matter Number: 202311-22544503
        Right to Sue: Harris / Elevance Health et al.

Dear Kira Brekke:

Attached is a copy of your **amended** complaint of discrimination filed with the Civil
Rights Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq.

Pursuant to Government Code section 12962, CRD will not serve these documents on
the employer.  You or your client must serve the complaint.

The amended complaint is deemed to have the same filing date of the original
complaint.  This is not a new Right to Sue letter.  The original Notice of Case Closure
and Right to Sue issued in this case remains the only such notice provided by the CRD.
(Cal. Code Regs., tit. 2, § 10022.)

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

**EXHIBIT 2**
**Page 31**

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Nicholas Harris                                                          CRD No. 202311-22544503

                              Complainant,

vs.

Elevance Health
220 Virginia Avenue
indianapolis, IN 46204

The Elevance Health Companies, Inc.
220 Virginia Avenue
Indianapolis, IN 46204

Blue Cross of California
21215 Burbank Blvd
Woodland Hills, CA 91367

                              Respondents

_____

**1.** Respondent **Elevance Health** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**.Complainant is naming **The Elevance Health Companies, Inc.** business as Co-Respondent(s).
Complainant is naming **Blue Cross of California** business as Co-Respondent(s).

**3**. Complainant **Nicholas Harris**, resides in the City of **Los Angeles,** State of **CA.**

**4**. Complainant alleges that on or about **January 1, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's medical condition (cancer or genetic characteristic), disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

-1-
*Complaint – CRD No. 202311-22544503*

Date Filed: November 3, 2023
Date Amended: April 1, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT 2**
**Page 32**

**Complainant was discriminated against** because of complainant's medical condition (cancer or genetic characteristic), disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result of the discrimination was terminated, reprimanded, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied work opportunities or assignments, denied accommodation for a disability, denied employer paid health care while on family care and medical leave (cfra), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result was terminated, reprimanded, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied work opportunities or assignments, denied accommodation for a disability, denied employer paid health care while on family care and medical leave (cfra), denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Additional Complaint Details:** After experiencing severe neurological issues, I was discriminated against for my disability, retaliated against, and fired while I was out on FMLA.

-2-
*Complaint – CRD No. 202311-22544503*

Date Filed: November 3, 2023
Date Amended: April 1, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT 2**
**Page 33**

VERIFICATION

I, **Kira Brekke**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On November 3, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                                                             **Los Angeles, CA**

-3-
*Complaint – CRD No. 202311-22544503*

Date Filed: November 3, 2023
Date Amended: April 1, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT 2**
**Page 34**